**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JACQUELINE KOHAKE,             Case No. 1:12cv959

    Plaintiff,                         Michael R. Barrett, Judge

  -vs-

DEPARTMENT OF THE TREASURY,

    Defendant.

## OPINION AND ORDER

This matter came on for consideration of Defendant's Motion for Summary Judgment (Doc. 12); Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docs. 17, 18); Defendant's Reply In Support of Motion for Summary Judgment (Doc. 22); Plaintiff's Supplemental Response and Affidavit in Support of Memorandum in Opposition to Motion for Summary Judgment (Doc. 26); and Defendant's Response (Doc. 27).

## BACKGROUND

In her Complaint, Plaintiff Jacqueline Kohake brings a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, for the disclosure and release of records held by Defendant United States Department of the Treasury through the Internal Revenue Service. (Doc. 1). Plaintiff requests that the Internal Revenue Service disclose the following information regarding the Estate of William Rueben Meadors: "All estate tax returns and return information and any documents or material relating to the Estate of William Ruben Meadors aka Meadows aka Medders aka Meadors aka Meder, etc. and for Racheal Clairanda Meadors King." (Doc. 12, Exh. 2, ¶2). Plaintiff claims to

be an heir of Meadors and Racheal Clairanda Meadors King. (Doc. 1, ¶ 3). Many of the heirs to the William Rueben Meadors Estate believe they are entitled to a fortune derived from the interest and royalties Meadors received from his Texas real estate and oil holdings.

Defendant acknowledges, with regret, the delay in processing Plaintiff's original request but explains that since the filing of Plaintiff's Complaint, Defendant has located 774 pages of responsive documents and released all but two of the pages to Plaintiff without redaction. Defendant explains that it retained these two pages to protect the identity of a confidential source. Defendant provided these two pages to the Court for an *in camera* review.

Plaintiff challenges the adequacy of Defendant's search as well as Defendant's withholding of the two pages under a FOIA exemption.

## SUMMARY JUDGMENT STANDARD

"District courts typically dispose of Freedom of Information Act cases on summary judgment based on affidavits from the agency describing the search procedures that it followed before allowing the plaintiff to conduct discovery." *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 341 (6th Cir. 2011) (citing *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 544 (2d Cir. 1999)); *see also Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) ("As most challenges to an agency's use of a FOIA exemption involve purely legal questions, district courts typically resolve these cases on summary judgment.").

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324.

## ANALYSIS

"The FOIA generally provides that every federal agency shall promptly make available upon request records reasonably described." *Rugiero v. U.S. Dept of Justice*, 257 F.3d 534, 543 (6th Cir. 2001) (citing 5 U.S.C. §552(a)(3)(A)). "Under the Act, an agency may not withhold or limit the availability of any record, unless one of the FOIA's specific exceptions applies." *Id.* (citing 5 U.S.C. §552(d)).

"To prevail on summary judgment, the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' and that any withholding of materials was authorized within a statutory exemption." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) (quoting *CareToLive*, 631 F.3d at 340).

As to the reasonableness of the search:

> The FOIA requires a reasonable search tailored to the nature of the request. [*Campbell v. United States Dep't of Justice*, 164 F.3d 20, 28 (D.C.Cir. 1998)]. At all times the burden is on the agency to establish the adequacy of its search. *Patterson v. IRS*, 56 F.3d 832, 840 (7th Cir. 1995); *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir. 1984)). In discharging this burden, the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search. *Bennett v. DEA*, 55 F.Supp.2d 36, 39 (D.D.C. 1999) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C.Cir. 1982)). "In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id.* The question focuses on the agency's search,

3

not on whether additional documents exist that might satisfy the request. *Steinberg*, 23 F.3d at 551 (quoting *Weisberg*, 745 F.2d at 1485).

*Rugiero*, 257 F.3d at 547.

Defendant has provided affidavits showing that Plaintiff's FOIA request was first processed by Kathy Peirce, an IRS Senior Disclosure Specialist, who used the Integrated Data Retrieval System ("IDRS") to search for responsive documents. (Doc. 12, Exh. 2, ¶¶6, 8). Peirce followed the standard procedure in attempting to locate the information by using the taxpayer's name and/or identification number provided by Plaintiff. (Doc. 12, Exh 2, ¶¶10, 11, 12). The search produced a tax return and an examination file, but Peirce was unable to retrieve these documents without their accession numbers. (Doc. 12, Exh 2, ¶¶ 13, 14, 15, 21, 26).

Another IRS employee, Julie Schmitz, Senior Disclosure Specialist, also worked on the processing of the requests, but was able to find the accession numbers associated with the tax return and the examination file. (Doc. 12, Exh. 2, ¶¶ 16, 17). Using accession numbers, Schmitz retrieved from the National Archives and Records Administration in Philadelphia, Pennsylvania, 374 pages of documents associated with the tax return and 400 pages of documents associated with the examination file. (Doc. 12, Exh. 2, ¶¶ 21, 22). These documents related to civil enforcement activities taken or contemplated by the Service in 1991 or 1992. (Doc. 12, Exh. 2, ¶24). The foregoing facts are supported by the Declaration Geoffrey J. Klimas, trial attorney with the United States tax Division (Doc. 12, Exh. 3); the Declaration of Julie Schmitz (Doc. 12, Exh. 5); Declaration of Stephanie Sasarak (Doc. 12, Exh. 6) as well as her *in-camera*

4

Declaration and, the *in-camera* Declaration of Stephen A. Whitlock (Doc. 13), both of which were reviewed by the Court.

In response, Plaintiff argues that Defendant failed to search documents located in the files of the United States Attorney for the Northern District of Texas and the Jefferson City Courthouse. The Court finds this argument unavailing. "The agency's possession of the requested documents is an indispensable prerequisite to liability in a FOIA suit." *Sneed v. U.S. Dep't of Labor*, 14 F. App'x 343, 345 (6th Cir. 2001) (citing *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 155 (1980)). Therefore, a reasonable search by Defendant would not include the files of the United States Attorney for the Northern District of Texas or documents located in the Jefferson City Courthouse.

Next, Plaintiff argues that Defendant did not provide a previous FOIA request submitted by Ann Helmon. Defendant responds that Plaintiff's FOIA request did not include a request for information related to other FOIA requests. Nevertheless, Defendant explains as a matter of routine, Schmitz did search its system for any prior requests using the taxpayer identification number and taxpayer names provided by Plaintiff, but the search did not produce any results. (Doc. 22-1, Julie Schmitz Decl. (12/5/2013), ¶ 3-9). Defendant also explains that it destroys FOIA requests based on the later of two years from receipt, six years from a final agency determination, or three years from a final court determination. (Id., ¶¶ 11-12). As such, the Helmon request, which was made in 1998 and a part of a final court determination in 2000, *see Helmon v. I.R.S.*, No. CIV.A.3:00CV0809M, 2000 WL 33157844, at *1 (N.D. Tex. Nov. 30, 2000), would have been destroyed. Because this destruction was well before Plaintiff's

5

FOIA request was made, there is no liability for failing to produce this information. *See Jones v. F.B.I.*, 41 F.3d 238, 249 (6th Cir. 1994) (citing *Kissinger*, 445 U.S. at 151-52) ("In the context of a FOIA action, we cannot order the FBI to make amends for any documents destroyed prior to the request because a FOIA request pertains only to material in the possession of the agency at the time of the request.").

Plaintiff also argues that Defendant failed to search pre-1991 information or conduct a search regarding tax liens. However, in her affidavit, Schmitz states that her search was without any date restrictions, and was designed to locate information about tax liens. (Schmitz Decl. (12/5/13), ¶¶ 12, 13).

The Court finds that based on the affidavits and declarations submitted by Defendant, Defendant has demonstrated that it conducted a search in good faith using methods to reasonably identify and produce the requested documents. *Accord CareToLive*, 631 F.3d at 341 (explaining that a court's review "focuses on the adequacy of the agency's search, and not on the chance that additional documents exist.").

Plaintiff attached to her Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 26) a series of exhibits: Exhibit A is mostly inadmissible hearsay; Exhibit B references a "Writ" from the President of the United States, newspaper articles and court citations; Exhibit B-2 contains an undated newspaper article; Exhibit B-3 is a petition for heirship filed in Pennsylvania; and Exhibit B-4 are handwritten notes and letters from 1912 and 1971, as well as various court filings in Texas. Additionally, Plaintiff provided an Affidavit of Dan Profitt. (Doc. 26, Exh. 1). In his Affidavit, Profitt indicates that he is the Administrator of the Estate of William Ruben Meadors, and urges the Court to consider the aforesaid documents as

discussed above. Profitt also claims that the Estate of Clairanda Meadors was not explored.

These documents do not create a genuine issue of material fact as to whether Defendant's showing that its search for responsive documents was reasonable. *See CareToLive*, 631 F.3d at 341 (citing *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C.Cir. 2006) (holding that requestor's assertion that an adequate search would have yielded more documents is mere speculation insufficient to rebut affidavits describing search process agency performed)). For the most part, these documents provide background information about the Estate of William Ruben Meadors and do not identify any deficiencies in the search conducted by Defendant. While Profitt states that the estate of Clairanda Meadors was not explored, this statement is contradicted by Peirce's Declaration which states that her search was based on all taxpayer identification numbers and names provided by Kohake, including the name of Racheal Clairanda Meadors King. (Doc. 12-4, Peirce Decl. ¶¶ 10).

Plaintiff also contends that the two withheld documents are not entitled to the confidential sources exemption, 5 U.S.C. §552(b)(7)(D), which exempts from disclosure records or information compiled for law enforcement purposes which:

> Could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. §552(b)(7)(D). The Sixth Circuit has explained that "[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the

7

exemption may be claimed regardless of the public interest in disclosure." *Jones v. F.B.I.*, 41 F.3d 238, 247 (6th Cir. 1994). The Supreme Court has explained that "a source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (quoting S.Rep. No. 1200, 93rd Cong. 2d Sess. 13 (1974)), U.S. Code Cong. & Admin. News 1974 at pp. 6267, 6291).

In addition to the *in camera* declarations of Stephanie Sasarak (Doc. 13) and Stephen A. Whitlock (Doc. 13-1), the Court has also reviewed the documents themselves *in camera*. *Accord Rugiero*, 257 F.3d at 543 (citing 5 U.S.C. §552(a)(4)(B)) ("To ensure the breadth of disclosure, the Act authorizes courts to examine documents *in camera* when reviewing the propriety of any agency's withholdings."). Based on this review, the Court finds that the two documents were properly withheld.

Based upon all of the foregoing, the Court finds Defendant's Motion for Summary Judgment (Doc. 12) to be well taken and is therefore, **GRANTED**. The Court **DIRECTS** the Clerk to file under seal the two documents withheld by Defendant and provided to the Court *in camera*.

There being no remaining issues for this Court's determination, this matter is **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED**.

                                           */s/ Michael R. Barrett*
                                         Michael R. Barrett, Judge
                                         United States District Court